IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 07-cv-00763-WDM

BERNICE MARTINEZ,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Miller, J.

    Plaintiff Bernice Martinez ("Claimant") appeals the denial of her application for disability insurance benefits by defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). I have considered the parties' written and oral arguments, as well as the evidence contained in the certified administrative record. For the reasons that follow, I conclude this case should be remanded to the Commissioner.

### Background

    Claimant was born in December 1963. Administrative Record at 45. She dropped out of school in 9th grade and may have received a GED. *Id.* at 170. Her past work history includes receptionist/secretarial work, truck driving, and, most recently, telemarketing. *Id.* at 57, 171-83.

    Claimant's disability claim is based on her diagnosed depression, bipolar disorder, anxiety, and Attention Deficit Hyperactivity Disorder ("ADHD"). *Id.* at 56 She asserts that she became disabled on January 1, 2003 (around the time she was diagnosed with depression). *Id.* at 45.

Claimant's protective filing date for disability insurance and supplemental security income benefits is October 2004. *Id.* at 45. After denial, Claimant requested a hearing, which was granted. *Id.* at 42. The hearing was held before ALJ Nicholas J. LoBurgio on September 20, 2006. *Id.* at 160-95. Claimant was assisted by her eighteen year old daughter but otherwise had no representation or legal counsel. A vocational expert (VE) testified in response to several hypothetical questions about jobs existing in the economy that a person with some of Claimant's restrictions might be able to perform. *Id.* at 190-95. The ALJ issued an unfavorable decision on October 13, 2006. *Id.* at 17-25. Claimant filed a Request for Review with the Appeals Council on November 28, 2006. *Id.* at 154 Claimant's Request for Review with the Appeals Council was denied on February 9, 2007. *Id.* at 6-9.

Medical History

Claimant's primary treatment has been with Harry J. Walter, D.O. *Id.* at 116. Dr. Walter provided a letter dated March 11, 2005 listing her appointments and diagnoses from February 2003 to March 2005 (12 appointments). *Id.* She was initially treated for depression until her diagnosis was changed to bipolar disorder around June 2004. *Id.* There are clinical notes from Dr. Walter's office, but otherwise little or any assessment or evaluation by Dr. Walter of Claimant's status and work capacity.

Claimant was sent to Dr. William H. Graham for a consultative examination on or around January 3, 2005. *Id.* at 110. Claimant described symptoms including feelings of hopelessness and worthlessness, lethargy, isolation, and alternating extremely depressed episodes (with excessive sleeping and staying in bed) and manic episodes (marked by little sleep and risky or impulsive behavior). *Id.* She noted poor appetite, memory, concentration, and extra anxiety. *Id.* at 111. She also reported some intermittent pain in

2

her legs. *Id.* When she is in a depressed state, her teenage daughter cares for her by bringing her food and otherwise taking care of the household. *Id.* Claimant reported that she does some housework when she is not in a depressed state. *Id.* at 112. She was prescribed Symbiax for depression. *Id.* Dr. Graham noted that she seemed well cared for and groomed but that she exhibited depression and anxiety and appeared physically uncomfortable at times. *Id.* at 113. He diagnosed bipolar mood disorder and noted there were no inconsistencies between her report of low level chronic pain and her observed pain behavior. *Id.* at 113-14. He assessed her with a Global Assessment of Functioning ("GAF") rating of 50. Id. at 113. He found that she had some limitations on memory and sustained concentration. *Id.* at 114. He opined that Claimant's condition was likely to be "chronic and persistent" but would "wax and wane" and might improve with treatment. *Id.* at 114.

A Mental Residual Functional Capacity Assessment was completed by Ellen Ryan, M.D., on or around January 21, 2005, based on a review of Claimant's records (i.e., non-examining). *Id.* at 91-108. The RFC noted moderate limitations in: ability to understand and remember detailed instructions; ability to carry out detailed instructions, maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; or ability to interact appropriately with the general public. *Id.* at 91-92. The examiner opined that Claimant "can do work not involving much complexity, consisting of simple tasks learned in a short time . . Less contact w/general public." *Id.* at 93. Although Dr. Ryan agreed that Claimant had bipolar disorder, a recognized

3

mood/affective disorder, she apparently concluded that Claimant's condition did not meet all the criteria for Listing 12.04 (Affective Disorder). *Id.* at 105-6.

Claimant enrolled for a time in a mental health program at the Community Reach Center. She was assessed around November 2004 with a GAF rating of 55. *Id.* at 123. In treatment notes dated February 7, 2005, she reported being highly depressed with excessive sleeping. *Id.* at 124. Individual therapy and a medication review was recommended (Claimant was still taking Symbiax), although it was noted that Claimant expressed doubts about the utility of therapy since she talks to her mother and daughter when she feels depressed. *Id.* Claimant's participation in Community Reach ended around October or November 2005. *Id.* at 132-33. The discharge report noted she had been erratic in her attendance in individual therapy and attended only one group therapy session. *Id.* at 133. The report noted she had not made progress with her depression and that she had been encouraged to get additional assistance from the Mental Health Center of Denver. *Id.*

Claimant submitted a note from Daniel Ryan, FNP-C, on Dr. Walter's letterhead with her request for review to the Appeals Council. *Id.* at 157. The letter stated that "[Claimant] has been under our care and treatment since February of 2003. [Claimant] has been diagnosed with bipolar depression and anxiety. This has been difficult to manage and as a result [Claimant] has not been able to maintain employment. As of this date I do not feel that [Claimant] will be capable of gainful employment of any kind. . . ." *Id.*

Administrative Proceedings

The Secretary has established a five-step evaluation process to determine whether a claimant is disabled for purposes of the Social Security Act. *See Williams v. Bowen*, 844

4

F.2d 748, 750-52 (10th Cir. 1988). The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing [his] past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992).

At the hearing, Claimant was "represented" by her eighteen year old daughter, but the daughter did not ask any questions or participate in the proceedings (she also admitted she had no idea how to represent someone in these circumstances). Administrative Record at 160. The ALJ asked Claimant if she wanted to go ahead or to wait and get an attorney or other qualified representative; Claimant elected to continue. *Id.* at 165-66.

Before questioning Claimant, the ALJ observed that Claimant looked barely able to stay awake, which Claimant attributed to her medication and depression. *Id.* at 166. Nonetheless, the ALJ went on with the hearing. He first reviewed Claimant's employment history, asking her about the details of her previous jobs. *Id.* at 171-183. Claimant testified she is no longer taking Symbiax, because her Medicaid ran out, but that she now takes Seraquil, which helps her sleep better but makes her drowsy. *Id.* at 183-84. When asked what prevented her from working, Claimant stated "really bad depression," noting that even when things were going fine she was unable to get out of bed. *Id.* at 185-86. She stated that she had tried therapy but did not find it any more useful than talking to her mother and daughter. *Id.* at 187. She testifies that she regularly stays in bed for up to four days in a row. *Id.* at 189. When not in a depressed state, she helps with vacuuming, dishes, or laundry. *Id.* She lives with her daughter and also with a fifteen year old son. *Id.* She has little involvement in her son's school activities. *Id.*

The ALJ asked the VE several hypothetical questions assuming Claimant's age, education, and past work. *Id*. at 192. In addition, "[t]his person has the ability to understand, remember and carry out those kinds of basic work instructions that can be learned within a period of approximately 30 days, where there is no work interaction with the public." *Id*. Further assumptions were that the work was "routine, repetitive and occurs in an essentially unchanging-type work environment." *Id*. The VE testified that Claimant, with these limitations, could still perform her past work as a dump truck driver. *Id*. When the inability to work at unprotected heights and near open dangerous machinery were added, all of Claimant's previous work was precluded. *Id*. However, the VE testified that a person with this RFC could work as a cleaner or housekeeper. *Id*. at 193. Finally, the VE testified that the customary tolerance for absences is no more than two absences a month. *Id*. at 194.

Claimant also submitted two letters, apparently from her last two employers in telemarketing. A letter purporting to be from Frank Dalpes of Xentel, Inc., dated September 1, 2006, states, "This letter is being written in reference of Ms. Bernice Martinez. Ms. Martinez was terminated today, Friday September 1, 2006 due to poor attendance, inattentive behavior, and an inability to remember and follow directions." *Id*. at 89. Mr. Dalpes invited the reader to contact him. *Id*. The second letter, dated September 7, 2006, purports to be from Scott Peters. *Id*. at 90. In the letter, Mr. Peters states that he was Claimant's supervisor at TMG Marketing and that "[Claimant] had an extremely hard time remembering skills that I would train her on." *Id*. He notes that Claimant had attendance problems, which she attributed to her depression. *Id*. Mr. Peters opines, "It is my belief that [Claimant] tried but was unable to come to work on a daily basis and remember what was taught." *Id*. He concludes by noting that he would have laid her off

6

sooner but that she really seemed to try to make it work. *Id.*

The ALJ issued a decision on October 13, 2006. *Id.* at 17-25. The ALJ reviewed and summarized the medical records and made the following findings:

1. Claimant had not engaged in substantial gainful activity since her onset date. *Id.* at 18. Her efforts at working in telemarketing were considered to be unsuccessful work attempts. *Id.*

2. Claimant had a severe impairment, specifically an affective disorder. *Id.*

3. None of the impairments, alone or in combination, met the criteria of any listed impairment. *Id.* at 19.

4. Claimant was not entirely credible regarding her statements concerning her impairment and its impact on her ability to work. *Id.* at 20. This was based on Claimant's description of her activities and life style, failure to follow prescribed treatment, degree of medical treatment required, discrepancies between Claimant's assertions and information contained in the documentary reports, and the reports of the treating and examining practitioners, and the findings made on examination. *Id.* Specifically, the ALJ asserted that Claimant's subjective complaint of a "bad depression problem" was not substantiated by "formal testing or mental status evaluation." *Id.* The ALJ noted Claimant's discharge from the Community Reach program for erratic attendance and lack of follow up. *Id.* The ALJ noted the findings from Dr. Graham's consultative examination, as well as clinical notes from Dr. Walter, including a note from September 2006 that Claimant reported being "very depressed." *Id.* at 21. The ALJ stated that Claimant's report of the severity and frequency of her symptoms is inconsistent with the record because "the clinical notes from Dr. Walter show almost no objective findings and only the claimant's subjective complaints of depression." *Id.* In addition, while Claimant testified at the hearing that she was drowsy, "the record does not reflect the claimant reporting this problem to her treatment providers." *Id.* at 22. Claimant sought treatment only sporadically from Dr. Walter and the Community Reach Center gave her a GAF of 55. *Id.* Finally, the ALJ concluded that Claimant was not consistent with taking medication and had been too inconsistent with therapy to gauge its effectiveness. *Id.*

5. The ALJ refused to consider the two notes from Claimant's last employers, deeming them inadmissible under Rule 701 of the Federal Rules of Evidence and not consistent with other evidence in the record. *Id.*

6. The Claimant could not perform her past relevant work. *Id.* at 23. She had the residual functional capacity to perform work at all exertion levels but had to work in a routine, repetitive, and unchanging work environment. *Id.* She suffers mild limitations in daily living activities, moderate limitations in social

7

functioning, persistence and pace. *Id.* In light of the VE's testimony that a person with Claimant's RFC could perform the work of house cleaner or cleaner, the ALJ concluded Claimant was capable of performing jobs existing in significant numbers in the economy. *Id.*

The Appeals Council denied a request for review, rendering the ALJ's determination final for purposes of this appeal.

## Standard of Review

I review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence in the record as a whole and whether he applied the correct legal standards. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner must apply the correct legal standard, and must provide the court with a sufficient basis to determine that appropriate legal principles were followed. *Nielson v. Sullivan*, 992 F.2d 1118, 1119-1120 (10th Cir. 1993).

## Discussion

Claimant raises several arguments on appeal: (1) the ALJ failed to properly assess the evidence in determining Claimant's RFC; (2) the ALJ did not discuss or determine whether Claimant's other impairments were severe at Step Two or Three; (3) the ALJ did not properly assess the VE's testimony; (4) the ALJ's credibility assessment is not supported by substantial evidence; and (5) the Appeals Council did not properly address the new opinion from Nurse Ryan, a treating source.

1. Assessing Medical and Non-medical Evidence

Claimant argues that the ALJ ignored or rejected opinions from Claimant's

8

treatment providers (Dr. Walter and Nurse Ryan) because of the lack of "objective" findings. I agree that in general, the ALJ appears to have discounted the severity of Claimant's symptoms and did not take full account of the evidence provided in the treatment notes on this basis. This appears to be in error, as a psychological opinion may rest on observed signs and symptoms or on psychological tests. *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) (citing 20 C.F.R. Subpart P, App. 1 § 12.00(B)). In addition, I conclude that the record was inadequate to make a determination about Claimant's ability to work and the ALJ erred by not seeking additional information from Claimant's treating sources, particularly given Claimant's *pro se* status and mental impairments.

The ALJ is required to evaluate every medical opinion he receives. 20 C.F.R. §§ 404.1527(d) and 416.927(d). The opinion of a treating source is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "consistent with other substantial evidence in the record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting Social Security Ruling 96-2p, 1996 WL 374188). If the ALJ determines the treating source medical opinion is not entitled to controlling weight, it should not be rejected outright. "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Id.* at 1300 (quoting SSR 96-2p).[1]

---

[1]These factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at

9

Before an ALJ can reject the opinion of a treating physician completely, he must give specific, legitimate reasons for doing so. SSR 96-2p; *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). "[I]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation, or lay opinion." *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (citation omitted).

I agree with Claimant that the medical evidence supports her assertion of moderate to severe depression and bipolar symptoms and that the ALJ erred by discounting the treating source evidence, as all treating/examining sources have confirmed these diagnoses and given her GAF ratings of 50-55. Moreover, there is no indication that any medical source believed she was exaggerating her symptoms or otherwise not credible. Claimant's reports of her symptoms are also relatively consistent with all of these providers and indicate there could be some real limitations on her ability to work, including possible excessive absences and memory/concentration problems. To the extent that the ALJ gave greater weight to the non-examining source than to Claimant's treatment providers and the examining source, there may be error, particularly in how the ALJ evaluated the Claimant's credibility.

However, it is difficult for me to determine whether the ALJ gave proper weight to the treating source opinions because I cannot identify any opinions from those sources

---

1301 (10th Cir. 2003) (quoting *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)).

regarding Claimant's ability to work (with the exception of the letter from Nurse Daniel Ryan submitted by Claimant to the Appeals Council). Dr. Graham (the examining consultant) made observations that appear to support some limitations on memory and concentration, as well as the severity of Claimant's symptoms. However, the clinical notes of Dr. Walter and Nurse Ryan consist primarily of the diagnoses and medication, with some mention of Claimant's symptoms, but little in the way of opinion about her abilities.

This points to the larger problem with the ALJ's determination, which is that the record appears to be inadequate to determine Claimant's ability to work and to keep a job. "If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician, to determine if additional needed information is readily available." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (citing 20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1)). "The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden." *Id.* The Tenth Circuit emphasizes that the obligation of an ALJ to recontact a treating physician "arises whenever the information received from the treating doctor is inadequate, not when the record as a whole is inadequate." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001) (as amended).

Since Claimant in reality was not represented in the administrative proceedings, and the record contains significant evidence of mental disability [although not enough to determine how it actually affects her functioning], this matter should be remanded for additional development of the record. In addition to further developing the record regarding the nature and severity of Claimant's impairments, the ALJ should obtain opinions from Claimant's treating sources about Claimant's ability to work regularly. This

11

is important because a finding of not disabled must be supported by evidence that the individual can keep a job and there is a strong suggestion here that Claimant may have excessive absences and other impediments to regular work. *Winfrey v. Chater*, 92 F.3d 1017, 1025-26 (10th Cir.1996) (an ALJ's finding that a claimant is able to engage in substantial gainful activity "requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time.") The ALJ did not specifically address whether the Claimant can keep a job; alternatively, if he did, the conclusion is not supported by substantial evidence.[2]

    2.    <u>Failure to Include Other Impairments</u>

Claimant argues that the ALJ failed to consider the effect of Claimant's diagnosed conditions of ADHD and anxiety. First, the ALJ did not consider whether these were severe impairments. In addition, he did not consider the effect of these together with her bipolar disorder and depression. Finally, Claimant argues that the evidence demonstrates that her impairments qualify for Listing 12.04.

I agree that it may have been error for the ALJ to fail to consider the other diagnosed mental disorders at Step Two or to factor them into the residual functional capacity determination. However, I think the evidence is inconclusive as to whether Claimant's symptoms are severe enough to satisfy all the criteria for Listing 12.04 (mood disturbance), which requires "marked" difficulties and limitations in social functioning, daily

---

[2]Even Dr. Ryan, the non-examining reviewer, opined that Claimant would have moderate difficulties with attendance, punctuality, and interruptions in her ability to perform sustained work. The ALJ appears to have relied heavily on Dr. Ryan's assessment in formulating the RFC, but failed to address this portion of the report.

activities, and concentration, persistence, or pace. Again, on remand, the ALJ should obtain further information regarding Claimant's other mental disorders and should consider their effects in the overall determination.

    3.    <u>RFC Findings</u>

Claimant further contends that the ALJ's RFC findings are unsupported. First, Claimant asserts that the ALJ erred in rejecting the letters from Claimant's employers entirely. The ALJ appears to have erred in applying the Federal Rules of Evidence to exclude this evidence, particularly since the statements were probative of Claimant's ability to work a regular work week. Again, on remand, the ALJ should consider this evidence and other evidence regard the likelihood of Claimant's absences and accord it appropriate weight. Claimant also contends that there is no evidence that the VE testified about the exertional and skill levels of the jobs identified; in light of the need for remand, I need not address this issue.

    4.    <u>Credibility Determination</u>

Claimant asserts a number of errors in the ALJ's assessment of her credibility. In general, credibility determinations are the province of the fact finder, but nonetheless should be closely and affirmatively linked to substantial evidence. *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (as amended) (citation omitted). The Social Security rulings direct an ALJ to give reasons for a credibility finding that are supported by the record and are sufficiently specific to inform reviewers of the weight given to a claimant's statements and the reason for that weight. *See* Social Security Ruling 96-7p.

I agree that the ALJ improperly analyzed Claimant's credibility because of the fundamental error in deciding there were no "objective" findings consistent with the nature

13

and extent of her reported symptoms. As discussed above, the medical evidence does not conflict with Claimant's reported symptoms and is relatively consistent with Claimant's description.

Claimant also argues that the ALJ improperly concluded that Claimant failed to follow prescribed treatment. There are some references in the clinical notes that Claimant had failed to take medication, but otherwise it appears she has been compliant with taking her prescribed medicine, to the extent she can afford it. In addition, the ALJ may have erred in concluding that Claimant's failure to continue individual therapy should be used for an adverse credibility finding.

Before the ALJ may rely on the claimant's failure to pursue treatment or take medication as support for an adverse credibility determination, the ALJ should consider "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993). Again, it appears that there was insufficient evidence, particularly from the treating sources, to properly make this analysis with respect to Claimant's individual therapy. Claimant states that she discontinued the individual therapy because it was ineffective. On remand, to the extent that the ALJ relies on noncompliance with treatment for an adverse credibility finding, he needs to address the factors identified in *Thompson*.

Similarly, I agree with Claimant that her daily activities do not demonstrate that she can work a regular full time job, since her testimony was that she does a little housework when she is not in a depressive episode, but that she is regularly depressed. The ALJ had the opportunity to ask Claimant's daughter for further information about Claimant's abilities

14

but did not do so.  On remand, more development of this issue may be appropriate.

     5.    <u>Appeals Council Error</u>

Finally, Claimant contends that the letter from Nurse Ryan opining that Claimant cannot work should have been addressed by the Appeals Council, or at least triggered further development of the record.  I agree that the letter qualifies as material new evidence, since it is the only opinion from her treating sources regarding her ability to work, and should have triggered further development of the evidence.

<u>Conclusion</u>

Based upon my review of the record in this case, I find that the ALJ's findings are not supported by substantial evidence.  Accordingly, the determination that Claimant is not disabled is reversed and this matter is remanded for proceedings consistent with this opinion.

DATED at Denver, Colorado, on August 15, 2008.

                                    BY THE COURT:


                                    s/ Walker D. Miller
                                    United States District Judge